THOMAS C. JACQUES, JONATHAN S. JACQUES, JOHN WATERS, JOHN W. HUGHES, JOHN SHANKLIN, AND OSBORN REILY, Plaintiffs in Error, v. STEPHEN M. EDGELL AND ALEXANDER C. ANDERSON, Defendants in Error.

*Agent—Factor—Trust.*—Where an agent acts for an agreed compensation, or where there is no contract for a reasonable compensation, he will not be allowed to retain profits incidentally made in the execution of his duty, although it may have the sanction of usage. Where a person is actually or constructively an agent, all profits made in the business, beyond his ordinary compensation, are for the benefit of his employers.

*Error to St. Louis Court of Common Pleas.*

*Sharp & Broadhead*, for plaintiffs in error.

*Geo. P. Strong*, for defendants in error.

WAGNER, Judge, delivered the opinion of the court.

This was a suit instituted by the plaintiffs in error against the defendants to recover the profits on certain drafts drawn on New York and sold in St. Louis at a premium by the defendants, the said drafts having been purchased in New Orleans with money arising from the proceeds of a lot of pork belonging to plaintiffs and sold by the agents of defendants in New Orleans.

The petition sets out that on the 31st of September, 1860, defendants agreed with plaintiffs to sell for them at St. Louis, Keokuk, or New Orleans, the product of 2,200 hogs, then packed and in the hands of Clegham, Batly & Alexander of Keokuk, upon which defendants agreed to advance to plaintiffs $10,000—to charge plaintiffs ten per cent. interest on the money advanced and two and a half per cent. commission for selling; the said property to be insured for the defendants at the expense of the plaintiffs till shipped, and to be insured when shipped by the defendants; that the $10,-000 was advanced to plaintiffs by defendants; that the property was received by defendants and forwarded to New Orleans, where the pork was sold by defendants for $29,361.51, and the money received by them for plaintiffs; that the plaintiffs have paid back to the defendants the $10,000 advanced together with the ten per cent. interest thereon, and the two and a half per cent. commission for selling and the insurance. The petition further avers, that with the money arising from the proceeds of the sale of the pork the defendants purchased at New Orleans certain drafts on New York at a discount and afterwards sold them at St. Louis at a premium; that defendants realized on said drafts the sum of $2,209, for which they failed to account, and for which amount plaintiffs prayed judgment. To this petition the court sustained a demurrer, and rendered final judgment thereon, and the plaintiffs sued out their writ of error.

There is but one point and that is, whether the defendants were bound as agents of the plaintiffs to account for the proceeds of the drafts received for the sale of plaintiffs' property, or whether they were only bound to account for what the property sold at. Where an agent acts for an agreed salary or compensation, he will be held bound by the agreement; and where there is no positive or express contract, a reasonable compensation will be implied; but in neither case will he be allowed to retain profits incidentally obtained in the execution of his duty, even though it may have the sanction

6—VOL. XL.

of usage—Lees v. Nuttal, 1 Russ. & M. 53 ; S. C. 2 Mylne &
R. 819 ; Reed v. Warner, 5 Paige, 650 ; Massey v. Davies, 2
Vesey, 317, and the learned note by Mr. Sumner. The prin-
cipal is in general entitled not only to the bare amount of
what has been received by his agent, but also to all the in-
crease which has been made to his property ; and therefore,
where a person is either actually or constructively an agent
for other persons, all profits and advantages made by him in
the business beyond his ordinary compensation are for the
benefit of his employers—Dunlap's Pal. on Ag. 49; Sto. on
Ag. § 211. The case of Diplock v. Blackburn, 3 Campb.
43, may be cited as precisely in point on the question here.
There the master of a ship in a foreign port, from the state
of the exchange, received a premium for a bill drawn upon
England on account of the ship, and on a contest between
the owner and the master for the amount of premium, it was
contended that there was a usage for the masters of ships to
appropriate such premium to their own use. But Lord El-
lenborough rejected the claim of the master, and denounced
the usage, if any such prevailed, as a usage of fraud and
plunder. The same doctrine on similar facts is laid down
in Brown v. Litton, 1 P. Wms. 140.

The plaintiffs entered into a contract with the defendants
at a stipulated price, for which the defendants were to make
certain advances and perform other duties as agents ; the
compensation was agreed upon, and they could make noth-
ing more out of the transaction. They could not specu-
late out of the money of their principals, and if they made
investments with the proceeds of the pork, whatever profits
resulted from such investments enured to the principals'
benefit.

The judgment must be reversed and the cause remanded.
The other judges concur.